Estate of Fielder J. Coffin; Marjorie P. Coffin, Executrix, v. Commissioner.
Estate of Coffin v. Commissioner
Docket No. 42391.
United States Tax Court
T.C. Memo 1954-228; 1954 Tax Ct. Memo LEXIS 17; 13 T.C.M. (CCH) 1149; T.C.M. (RIA) 54338; December 20, 1954, Filed *17 1. Contemplation of death: Transfers of stock: Sec. 811(c). - Decedent transferred certain shares of stock to his wife and children over the period of 1937 through part of 1948. Held, the transfers were not made in contemplation of death. 2. Marital deduction: Valuation of life insurance policy pledged for debt of decedent: Sections 812(e)(1)(A) and 812(e)(1)(E)(ii). - Decedent took out a $50,000 insurance policy on his life with his wife as beneficiary. The policy was assigned to the wife as security for a loan she made to the decedent in the amount of $16,711.72. Respondent concedes that one-third of the face of the policy properly qualifies for the marital deduction as claimed by the petitioner, but contends that in determining the amount of the marital deduction the valuation of the policy to the exent qualifying for the deduction should be reduced proportionately by the indebtedness due on the policy. Held, respondent sustained. Richard W. Wilson, Esq., 420 Lexington Avenue, New York, N. Y., for the petitioner. Maurice E. Stark, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a *18 deficiency in estate tax in the amount of $18,266.04. An additional deficiency was claimed in an amended answer. In reply thereto petitioner asserted a claim for overpayment of estate tax in the amount of $3,200. The principal issue for decision (Issue I) is whether certain transfers of Sun Oil Company stock were made in contemplation of death within the meaning of section 811(c)(1)(A) of the Internal Revenue Code of 1939. Certain other issues raised by the affirmative allegations of the amended answer are conceded and can be reflected in a computation under Rule 50. There is also an issue (Issue II) raised in the amended answer concerning the valuation of an insurance policy on the life of the decedent for purposes of the marital deduction. In petitioner's reply it is alleged that this policy should not have been included in gross estate. Findings of Fact Petitioner is the duly appointed, qualified, and acting executrix of the Estate of Fielder J. Coffin, deceased. Fielder J. Coffin (herein called the decedent) died on May 31, 1948, at the age of 64, at Sarasota, Florida. An estate tax return was duly filed with the collector of internal revenue at Jacksonville, Florida. *19 Issue I Decedent's death resulted from a heart attack which was the terminal condition of previous coronary occulsions which will be referred to hereafter. The decedent was born on January 26, 1884. His father was accidentally killed when decedent was two years of age, leaving his mother with himself and an infant brother to support. The decedent later attended public schools in Geneseo, New York and St. John's Military School. He also attended Cornell University for two years. Lack of funds compelled him to leave and he went to work in Corning, New York and Chicago, Illinois. His early wages enabled him to be of some support to his mother whom he continued to support throughout his adult life. She died in 1948 at the age of 95. The decedent was married to Marjorie P. Coffin in July 1911. In 1914 the couple moved to Bronxville, New York. Three children were born of the marriage: Fielder J. Coffin, Jr., in 1914; Bruce Coffin, in 1917; and Marjorie Coffin, in 1922. In 1919 the decedent became associated with the Sun Oil Company of Philadelphia, Pennsylvania. His first assignment was to open a New York office and to organize and manage the New York district of the company. *20 The district was later enlarged to cover all of New England and most of New Jersey and he became the regional manager. Up to 1933 the decedent enjoyed excellent health. His recreation was divided among golf, tennis, swimming, hiking, motoring, and gardening. He participated in a number of civic and patriotic activities such as bond drives in World War I, the Home Guard, and Community Chest. He was a member of a yacht club and various other clubs and was also an active church member. In the fall of 1933 the decedent suffered a coronary occlusion with a lighter attack the following year. As a result he spent considerable time in bed and was incapacitated for his work for approximately two years. On his doctor's advice his physical activities were considerably curtailed. He filed applications for and collected disability benefits from his insurance companies during parts of 1933, 1934, and 1935. Part of this period was spent by decedent and his wife in Florida. The seriousness of these attacks was appreciated by the decedent and his family. Sometime before April 1937 the decedent had again taken up his duties with Sun Oil Company and on or about that date he was made manager of *21 the Foreign Sales Department with increased duties and salary. His new position required that he make at least one trip each year to Europe. During the period 1937 to 1940 he averaged more than one trip annually and personally covered a territory including England, France, Holland, Belgium, Switzerland, Italy and Germany. During these trips the decedent and his wife engaged in extensive entertainment of customers and associates in addition to the strictly business side of his duties. Sometime in 1939 the decedent began to suffer attacks of dizziness. He became nervous to such an extent that the company eventually decided to replace him with a younger man. It was impractical to place the decedent on a part time basis in some other position and out of consideration for his years of service the company retired him on half of his then salary on October 1, 1940. Prior to this action, the decedent was given a two-months vacation during which his general condition became much improved and this was one of the factors which led his employer to conclude he would be better off retired. The decedent did not take his retirement lightly. The resulting salary diminution concerned him and the *22 fact of his forced retirement from a long business life weighed upon him, He became depressed for a year or two. On retirement he again filed disability claims with his insurers. During examinations by doctors for the insurance companies the decedent exhibited evidence of anxiety neurosis and defeatism. The insurance companies granted his claims, dating from about the time of his retirement. Their doctors reported a continuing history of coronary trouble with its usual accompanying symptoms. After his retirement the decedent and his wife moved to Sarasota, Florida, where they purchased a home. During the period from 1940 until his death in 1948 the decedent was continuously concerned about his sickness. His nervousness persisted. He visited a physician about once a month and was warned of the seriousness of his condition. Nevertheless the decedent pursued as normal a life as he could in the circumstances. He supervised improvements to his home. He continued social activities, enjoyed the sun and shore, kept up pleasant associations with the "younger set" of whom he was fond, and went boating in a small boat. Following his doctor's advice his physical exertions were kept at a minimum. *23 At the time decedent became associated with Sun Oil Company the company had in operation an employees' benefit or stock plan and over the years of his employment the decedent took advantage of the plan by purchasing Sun Oil stock at less than market value. Beginning in 1937 the decedent began making a series of gifts of his Sun Oil stock to his wife and children. In that year the decedent had just received a promotion, his two sons were in college, his daughter was still in public school at the age of 15, and his income was adequate for his normal family needs. The decedent was impressed with the soundness of Sun Oil stock and aside from life insurance he had no other investments. The making of the gifts followed no set plan. Sometimes they were made near or at Christmas, sometimes at birthdays of the donees and on such other occasions as completion of school or discharge from military service. During the period from 1937 through part of 1948 the decedent transferred a total of 1342 shares of Sun Oil Company stock to his wife; 173 shares to his son Fielder J. Coffin, Jr.; 142 shares to his son Bruce P. Coffin; and 155 shares to his daughter. After the decedent's retirement in *24 1940 the number of shares given on particular occasions to his wife was comparably larger than it had been before. The gifts to members of his family totalled 1,812 shares and had a value at the decedent's death of $120,045. There remained in the decedent's estate after the gifts, 1,670 shares which were returned for estate tax purposes at a value of $110,220. The decedent had executed at least two wills during his lifetime prior to his last will and testament which was dated June 3, 1946. In his last will the decedent named his wife as direct beneficiary and his three children as contingent beneficiaries. The stock transfers made by the decedent were not made in contemplation of death. Issue II On March 19, 1930, the decedent took out a "Life Convertible" policy No. 8026281 on his life in the amount of $50,000 with the Equitable Life Assurance Society of the United States. Schedule D-1 attached to the estate tax return shows that of the face amount of this policy, $33,333.33 was applied by the insurer "to purchase life income - 20 years certain, payable monthly" to the decedent's wife with remainder at her death to be paid to the decedent's two sons. The remaining $16,666.67 *25 was left at interest with the insurer with the option in the wife to withdraw the cash or purchase life income. Prior to his death the decedent had made a loan against this policy with the insurance company. Also prior to the decedent's death, his wife paid off this loan in the amount of $16,711.72 and the decedent gave her his note in that amount as evidence of his debt to her for having paid the insurance loan. Policy No. 8026281 was assigned to the wife on January 10, 1944, in the amount of $16,711.72 as security for the debt. This assignment was outstanding at the date of the decedent's death. The $50,000 face value of the policy was included in the decedent's estate tax return as a part of the gross estate. The amount of $16,711.72 was reported in the estate tax return as a debt owing by the decedent to his wife at the time of death. One-third of the face amount of the $50,000 face amount of the policy was used in the estate tax return together with other proceeds in computing the amount of the marital deduction. Opinion Issue I This aspect of the case presents the question as to whether the impelling cause of the stock transfers was "the thought of death" or, as *26 the question has also been phrased, whether the motive which induced the transfers was "of the sort which leads to testamentary disposition." United States v. Wells, 283 U.S. 102 (1931). The resolution of this question in the instant case has not been without difficulty. However, after giving careful consideration to all of the facts of record and the contentions of the parties we have concluded and found as a fact that the stock transfers made by the decedent were not made in contemplation of death. Accordingly, we decide this issue against the respondent. Issue II On this issue the respondent concedes that one-third of the value of the policy of life insurance assigned as security to the decedent's wife is properly includible for the purpose of computing the amount of the marital deduction provided for in section 812(e)(1)(A), Internal Revenue Code. However, the respondent contends that the petitioner erred in assigning the figure of $16,666.66 as the value of one-third of the policy for this purpose, and argues that the proper way to value the one-third interest is to apply against it a pro-rata amount of the indebtedness for which the *27 policy was assigned as security. We think the respondent's contention is correct. Section 812(e)(1)(A) allows a marital deduction equal to the value of any property interest passing from the decedent to his surviving spouse to the extent that such interest is included in determining the value of the gross estate, and section 812(e)(1)(E)(ii) provides that in arriving at the value of such a property interest, where the property or interest "is encumbered in any manner * * * such encumbrance * * * shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined." We think it plain that the assignment of the policy as security for the decedent's indebtedness to his wife constituted an encumbrance of the policy which must be taken into account in arriving at the value of the policy for the marital deduction. And since the respondent concedes that one-third of the policy qualifies for that deduction and the petitioner claims no more, we hold that the respondent's action in applying the amount of the encumbrance pro-rata in determining the amount to be included in the marital deduction with respect to the policy is proper. *28 The petitioner does not meet the respondent's argument head-on. Instead, it is first argued that it really makes no difference whether respondent is correct or not since it is not apparent that it would have any effect on the estate tax as finally determined. This point will not be commented on here because whether or not it would have any effect must await a Rule 50 computation. Secondly, in reply to the amended answer, the petitioner alleges that the face value of the policy in question was erroneously included in gross estate in the first place, and claims an overpayment in estate tax. The foundation of this allegation is the contention that the decedent had formally assigned all his right, title and interest in the policy to his wife and retained no incidents of ownership therein at the time of his death. The evidence does not support this contention. The assignment was not an absolute assignment or transfer of the policy. It was an assignment as security only. We find no merit in this contention of the petitioner. Decision will be entered under Rule 50.